IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORCHESTRATE HR, INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:13-cv-2110-P |
| | § | |
| ANTHONY L. TROMBETTA, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiffs have filed a Motion for Sanctions Against All Defendants, *see* Dkt. No. 232, which Chief District Judge Jorge A. Solis has referred to the undersigned United States magistrate judge, *see* Dkt. No. 242. Among the arguments raised in the motion is Plaintiff's contention that Defendants Anthony L. Trombetta, The Borden-Perlman Insurance Agency, Inc., Kelly Myers, and Dave Icenhower should be held in civil contempt for violations of Agreed Temporary Restraining Orders and an Agreed Temporary Injunction. Defendants responded to the motion, *see* Dkt. No. 257, and Plaintiffs filed a reply, *see* Dkt. No. 263. The Court heard oral argument on the motion on February 18, 2016. *See* Dkt. Nos. 274 & 285

The undersigned now issues the following findings of fact, conclusions of law, and recommendation on the contempt portion of the Motion for Sanctions Against All Defendants and, pursuant to 28 U.S.C. § 636(e)(6), certifies facts that, in the undersigned's opinion, show that certain conduct by Defendants Anthony L.

-1-

Trombetta, The Borden-Perlman Insurance Agency, Inc., and Kelly Myers constitutes a violation of this Court's orders for which Defendants Anthony L. Trombetta, The Borden-Perlman Insurance Agency, Inc., and Kelly Myers should be cited to appear before Chief Judge Solis and show cause why they should not be held in civil contempt.

## Background

On May 31, 2013, Plaintiff Orchestrate HR, Inc. ("Orchestrate") filed this lawsuit in state court, *see* Dkt. No. 2 at 13-30, and a Temporary Restraining Order was entered, *see id.* at 164-66. Defendants Anthony L. Trombetta and the Borden-Perlman Insurance Agency, Inc. ("BP") removed the case to this Court on June 5, 2013, *see id.* at 1-3, and the parties submitted proposed agreed temporary restraining orders on June 10, 2013 and June 11, 2013, *see* Dkt. Nos. 9 & 10. The Court entered an Agreed Temporary Restraining Order on June 21, 2015, which was extended on August 2, 2013 and on September 24, 2013. *See* Dkt. Nos. 15, 21, & 26. The Court entered an Agreed Temporary Injunction on October 7, 2013. *See* Dkt. No. 30.

The Agreed Temporary Injunction restrains and enjoins "Anthony Trombetta or anyone acting at his direction" from "directly or indirectly"

(i)     Knowingly using or disclosing any of Plaintiff's confidential information;

(ii)    Considering as a potential prospect or pursuing, in any form, as a client, directly or indirectly, any Designated Client; "**Designated Client**" means any person or entity named on a separate list entitled "Designated Client List" and kept by the parties;

(iii)   Knowingly, directly or indirectly, attempting to change agreement between or among any Designated Client, agency or insurer and Orchestrate;

     (iv)    Making any false statements about Plaintiff or Plaintiff's products or services;

     (v)    Destroying any evidence which might support any of the claims in this case or be likely to lead to the discovery of admissible evidence in this case.

Dkt. No. 30 at 2-3 (emphasis in original); *see also* Dkt. No. 264 at 2, 131-135

(Designated Client List).

     The Agreed Temporary Injunction also restrains and enjoins BP "together with

their agents, servants, attorneys, and representatives" from

     (I)    Knowingly using or disclosing any of Plaintiff's confidential information;

     (ii)    Knowingly allowing Defendant Trombetta to violate this Order, specifically but not limited to including Anthony Trombetta on communications to, from, or about the Designated Clients;

     (iii)    Knowingly allowing Defendant Trombetta to breach his Employment Agreement dated July 13, 2011;

     (iv)    Knowingly allowing Defendant Anthony Trombetta to violate his Employee Confidentiality Agreement of July 13, 2011;

     (v)    Making any false statements about Plaintiff or Plaintiff's products or services;

     (vi)    Destroying any evidence which might support any of the claims in this case or be likely to lead to the discovery of admissible evidence in this case.

Dkt. No. 30 at 3. Mr. Trombetta's employment agreement provides, in part, that

Orchestrate's clients "shall not be considered as a potential prospect or pursued as a

client, directly or indirectly" for a three-year period after the termination of his

employment. *See* Dkt. No. 233-2 at 61-62.

-3-

Plaintiffs contend that Defendants have violated the Agreed Temporary Restraining Orders and Agreed Temporary Injunction by pursuing BP's clients.

Both Anthony Trombetta and Kelly Myers admitted during their depositions that Orchestrate and BP were direct competitors. *See* Dkt. No. 233-2 at 64, 65-66 (P. 117, L. 4-P. 118, L. 9); 68, 69 (P. 44, L. 8-16), 70 (P. 210, L. 7-9). Mr. Trombetta also testified that the Agreed Temporary Restraining Orders and Agreed Temporary Injunction were agreed to by his lawyers and that they had fully explained those documents to him. *See* Dkt. No. 233-1 at 2, 7 (P. 192, L. 7-13), 15 (P. 233, L. 7-10), 15-16 (P. 233, L. 24 - P. 234, L.5), 17 -18 (P. 234, L. 17 - P. 235, L.11), 23-24 (P. 242, L.22 - P. 243, L.1).

Mr. Trombetta originally testified that he did not believe he had violated either the Agreed Temporary Restraining Orders or the Agreed Temporary Injunction. *See id.* at 8-9 (P. 193, L. 23 - P. 194, L. 9). Mr. Trombetta changed his testimony and admitted violations of the temporary restraining orders by himself and others after he was confronted with a series of emails. *See id.* at 26, 28-29. The Court notes that the emails had been requested on March 12, 2014, *see* Dkt. No. 233-2 at 72-83 (RFPs No. 1 & 2), but not produced until days before Mr. Trombetta's January 6, 2016 deposition, *see id.* at 103.

Mr. Trombetta testified that he submitted a bid or proposal to Sam Houston State University in July 2013 and was working on getting business from the University of Louisiana Lafayette in August 2013. *See id.* at 26 (P. 260, L. 3-9); 30 (P. 265, L. 10-23); 31 (p. 268, l. 7-15). Both schools are on the Designated Client List. *See* Dkt. No.

264 at 131, 132. Mr. Trombetta also testified that Kelly Myers of BP violated the temporary restraining order. *See id.* at 28-29 (P. 263, L. 5-P. 264, L. 8).

Exhibit 23 to Mr. Trombetta's January 6, 2016 deposition is an email chain dated March 6, 2015 through April 30, 2015, which was originally between Kelly Myers and Rob Haddad, a local broker. *See* Dkt. No. 278 at 103 - 126 (Exhibit DD). In response to Mr. Haddad's inquiry whether "are there some other schools I can target in this area for you," Mr. Myers responded with a list of five schools: University of Central Florida, University of South Florida, Florida Atlantic, Florida International, and University of Miami. *Id.* at 112, 114. All five schools are on the Designated Client List. *See* Dkt. No. 264 at 132, 134, 135. When Mr. Haddad asks for "bullet points" "that I can go after these schools with," Mr. Trombetta was brought into the conversation, and he responded with marketing points for the broker to use to secure business from these five schools. Dkt. No. 278 at 104-105, 111. Plaintiffs represent that these are their five biggest clients in Florida.

The undersigned now concludes that clear and convincing evidence shows that Defendants Anthony L. Trombetta, The Borden-Perlman Insurance Agency, Inc., and Kelly Myers have not complied with the Court's Agreed Temporary Restraining Orders and Agreed Temporary Injunction and that these defendants should be cited to appear before Chief Judge Solis and show cause why they should not be held in civil contempt and be subject to appropriate judicial sanctions.

## Legal Standards

In a case in which, as here, the matter is referred to a magistrate judge under

-5-

28 U.S.C. § 636(b), 28 U.S.C. § 636(e)(6) provides that, "[u]pon the commission of any [act of contempt] – ... (B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where – ... (iii) the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge."

"A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987). "The judicial contempt power is a potent weapon" that should not be used unless a specific aspect of the court's order has been "clearly violated." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999).

"Contempt is characterized as either civil or criminal depending on its 'primary purpose.'" *In re Collier*, 582 F. App'x 419, 522 (5th Cir. 2014). "A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 290-91 (5th Cir. 2002).

-6-

To show that civil contempt is warranted, a moving party must establish "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). Intent is not an element of civil contempt; the issue is whether the alleged contemnor has complied with the court's order. *See Whitfield*, 832 F.2d at 913. The standard of proof for civil contempt is clear and convincing evidence, which is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted).

"After the movant has shown a *prima facie* case, the respondent can defend against it by showing a present inability to comply with the subpoena or order." *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987). "Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production." *United States v. Rylander*, 460 U.S. 752, 757 (1983). Additionally, "[t]he respondent may avoid a contempt finding by establishing that is has substantially complied with the order or has made reasonable efforts to comply." *In re Brown*, 511 B.R. 843, 849 (S.D. Tex. 2014) (citing *U.S. Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979)). And, "[e]ven if liability is established, the respondent may demonstrate mitigating circumstances that might persuade the Court to withhold the exercise of its contempt

-7-

power." *Id.* (citing *Whitfield*, 832 F.2d at 914).

"Upon a finding of civil contempt, the Court has broad discretion to impose judicial sanctions that would coerce compliance with its orders and compensate the moving party for any losses sustained. The Court may impose a conditional fine, provided the amount is reasonably designed to force compliance without being punitive, and/or a fixed term of imprisonment, with the condition that the contemnor be released if he or she complies with the court order. The Court also may require that the contemnors pay reasonable attorney's fees incurred by the moving party in obtaining the contempt finding." *Mary Kay Inc. v. Designs by Deanna, Inc.*, No. 3:00-cv-1058-D, 2013 WL 6246484, at *4 (N.D. Tex. Dec. 3, 2013) (citations omitted).

## Analysis

Plaintiffs contend that Defendants breached the Agreed Temporary Restraining Orders and the Agreed Temporary Injunction by targeting and contacting schools that Defendants were prohibited from considering as potential prospects or pursuing, in any form, as clients, either directly or indirectly. In response, Defendants do not address the alleged breach of the Agreed Temporary Injunction and argue that "most" of the breaches of the Agreed Temporary Restraining Orders were not true breaches and, even if there was a breach, Plaintiffs have failed to provide evidence of damages related to any breach.

First, Defendants argue that Mr. Trombetta's contacts with Sam Houston State University and the University of Louisiana Lafayette occurred during a one-week window during which no temporary restraining order was in place. The original

temporary restraining order was entered by the state court on May 31, 2013 and expired on June 14, 2013. *See* Dkt. No. 2 at 164-66. Defendants removed the case to this Court on June 5, 2013. *See* Dkt. No. 2. The parties submitted proposed temporary restraining orders on June 10, 2013 and June 11, 2013. *See* Dkt. Nos. 9 & 11. On June 21, 2013, the Court denied the motion to enter the June 10, 2013 proposed temporary restraining order as moot, granted the June 11, 2013 joint motion for a second agreed temporary restraining order, and entered an Agreed Temporary Restraining Order. *See* Dkt. No. 15.

Even if there was one week during which no temporary restraining order was in place – which is in doubt based on the parties' representations to the Court – Mr. Trombetta's deposition testimony establishes that he contacted Sam Houston State University and the University of Louisiana Lafayette in July 2013 and August 2013, during a time period in which the June 21, 2013 and August 2, 2013 Agreed Temporary Restraining Orders were in place. *See* Dkt. Nos. 15 & 21.

Second, Defendants argue that, during Mr. Trombetta's deposition, Plaintiffs' counsel referred to a proposed agreed temporary restraining order that the Court did not actually enter, instead of one of the Agreed Temporary Restraining Orders or the Agreed Temporary Injunction that the Court did enter. Plaintiffs contend that Mr. Trombetta violated the provision in the Agreed Temporary Restraining Orders and Agreed Temporary Injunction, which states that Mr. Trombetta and anyone acting at his direction are prohibited from "[c]onsidering as a potential prospect or pursuing, in any form, as a client, directly or indirectly, any Designated Client. '**Designated**

Client' means any person or entity named on a separate list entitled 'Designated Client List' and kept by the parties." This language is identical in the proposed agreed temporary restraining order that was not entered, *see* Dkt. No. 9, and the Agreed Temporary Restraining Orders and Agreed Temporary Injunction that were entered, *see* Dkt. Nos. 15, 21, 26 & 30.

Third, at the hearing, Defendants' counsel argued that Sam Houston State University, University of Louisiana Lafayette, and Savannah State University are excepted from the Designated Client List by an addendum to the list. *See* Dkt. No. 285 at 67-70, 83, 85-88; Dkt. No. 278 at 49-50. This argument was not made in Defendants' written response, and it appears that no one other Defendants' new counsel interprets the addendum to carve out schools from those on the Designated Client List that Defendants were prohibited from contacting. *See* Dkt. No. 285 at 76-80, 88-90. Instead, the addendum is made subject to the prohibition of "[c]onsidering as a potential prospect or pursuing, in any form, as a client, directly or indirectly, any Designated Client; '**Designated Client**' means any person or entity named on a separate list entitled 'Designated Client List' and kept by the parties," *see* Dkt. No. 278 at 49, and the addendum was deleted from the Agreed Temporary Injunction, *see* Dkt. No. 285 at 72. Accordingly, the undersigned concludes that the 25 schools listed on the addendum were not excepted out of the Designated Client List of schools that neither Mr. Trombetta nor BP could contact.

Fourth, Defendants argue that Plaintiffs have failed to show that they have suffered compensatory damages as a result of Defendants' violations of the Agreed

Temporary Restraining Orders and Agreed Temporary Injunction. But, even if injury or damages to Plaintiffs may be relevant to what judicial sanctions, if any, are appropriate, Plaintiffs need not show harm from Defendants' violations of the temporary restraining orders or Agreed Temporary Injunction to be held in civil contempt. *See Martin*, 959 F.2d at 47. And, if nothing more, Plaintiffs indisputably have incurred attorneys' fees and costs in their efforts to identify the violations of, and to seek enforcement of, the Agreed Temporary Restraining Orders and the Agreed Temporary Injunction.

## Certified Factual Findings

The first two elements necessary for a civil contempt finding have been established. A court order – the October 7, 2013 Agreed Temporary Injunction [Dkt. No. 30] — is in effect, and, prior to entry of the Agreed Temporary Injunction, the May 31, 2013 Temporary Restraining Order [Dkt. No. 2], the June 21, 2013 [Second] Agreed Temporary Restraining Order [Dkt. No. 15], the August 2, 2013 Fourth Agreed Temporary Restraining Order [Dkt. No. 21], and the September 20, 2013 Fifth Agreed Temporary Restraining Order [Dkt. No. 26], were in effect. The Agreed Temporary Injunction and each temporary restraining order entered after the case was removed to this Court restrained and enjoined Defendant Anthony Trombetta from "considering as a potential prospect or pursuing, in any form, as a client, directly or indirectly" any person or entity listed on the Designated Client List and restrained and enjoined Defendant Borden-Perlman Agency, Inc., together with its agents, servants, attorneys and representatives from knowingly allowing Mr. Trombetta to violate the Court's

-11-

temporary restraining orders or temporary injunction or to violate his employment agreement with Orchestrate, which includes an agreement that Orchestrate's clients "shall not be considered as a potential prospect or pursued as a client, directly or indirectly," for a three-year period after the termination of his employment.

The remaining issue is whether Defendants Anthony Trombetta, Kelly, Myers, Dave Icenhower, and BP have failed to comply with the Agreed Temporary Injunction and/or the Agreed Temporary Restraining Orders. Having considered all of the submissions and evidence before the Court, the undersigned, pursuant to 28 U.S.C. §§ 636(b) and 636(e)(6), now certifies the following facts that, in the undersigned's opinion, amounts to clear and convincing evidence that the following complained-of conduct by Anthony Trombetta, Kelly Myers, and BP constitutes civil contempt of the Agreed Temporary Injunction and the Agreed Temporary Restraining Orders. The undersigned does not find clear and convincing evidence of a violation by Dave Icenhower.

In July 2013, during the time period in which the June 12, 2013 Agreed Temporary Restraining Order was in effect, Anthony Trombetta submitted a bid or proposal to Sam Houston State University, a school that was included in the Designated Client List. In August 2013, during the time when the June 12, 2013 Agreed Temporary Restraining Order and the August 2, 2013 Agreed Temporary Restraining Order were in effect, Mr. Trombetta was working on getting business from the University of Louisiana Lafayette, another school that was on the Designated Client List.

After the Agreed Temporary Injunction was entered, which remains in effect, BP communicated with an agent, a local broker, from March 6, 2015 through April 30, 2015, to contact five potential prospects: University of Central Florida, University of South Florida, Florida Atlantic, Florida International, and University of Miami. All five schools are on the Designated Client List. Mr. Trombetta was included in these communications with the broker and Mr. Myers and provided information to assist the broker in pursuing these potential prospects or clients.

For all of these reasons, the undersigned finds, based on these certified facts, including as more fully described above, that Plaintiffs have established by clear and convincing evidence that Anthony Trombetta and BP failed to comply with the Court's Agreed Temporary Injunction, June 12, 2013 Agreed Temporary Restraining Order, and August 2, 2013 Agreed Temporary Restraining Order and that Kelly Myers failed to comply with the Court's Agreed Temporary Injunction. Accordingly, pursuant to Section 636(e), the undersigned recommends that Anthony Trombetta, Kelly Myers, and BP should be cited to appear before Chief Judge Solis and show cause why they each should not be held in civil contempt for violating the June 12, 2013 Agreed Temporary Restraining Order, the August 2, 2013 Agreed Temporary Restraining Order, and/or the October 7, 2013 Agreed Temporary Injunction.

## Recommendation

Defendants Anthony Trombetta, Borden-Perlman Insurance Agency, Inc., and Kelly Myers should be cited to appear before United States Chief District Judge Jorge A. Solis on a date that the Court will set and show cause why they each should not be

held in civil contempt for violating the Court's October 7, 2013 Agreed Temporary Injunction, June 21, 2013 Agreed Temporary Restraining Order, and/or August 2, 2013 Agreed Temporary Restraining Order and be subject to appropriate judicial sanctions to coerce compliance with the Court's orders and/or compensate Plaintiffs Orchestrate HR, Inc. and/or Vivature, Inc. for any losses sustained as a result of Anthony Trombetta's, Kelly Myers's, and/or BP's noncompliance.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 28, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-14-