IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ORCHESTRATE HR, INC. AND VIVATURE, INC.,** | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:13-CV-2110-L** |
| **ANTHONY L. TROMBETTA; THE** | § | |
| **BORDEN-PERLMAN INSURANCE** | § | |
| **AGENCY, INC.; KELLY MYERS;** | § | |
| **AND DAVE ICENHOWER,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiffs' Motion for Sanctions Against All Defendants ("Plaintiffs'

Motion" or "Motion") (Doc. 232), filed January 18, 2016, which was referred to Magistrate Judge

David L. Horan; and Judge Horan's Findings, Conclusions and Recommendation of the United

States Magistrate Judge ("Report") (Doc. 299). The Report and this memorandum opinion and order

deal only with the civil contempt portion of Plaintiffs' Motion. All other discovery issues raised by

Plaintiffs in their Motion were determined by the magistrate judge by separate order. For the reasons

herein explained, the court **accepts in part and rejects in part** the magistrate judge's findings and

conclusions (Doc. 299). Specifically, the court **accepts** the magistrate judge's findings and

conclusions as to Dave Icenhower, which were not objected to by Plaintiffs. The magistrate judge's

findings and conclusions are otherwise **rejected.** Accordingly, the court **denies** Plaintiffs' Motion

for Sanctions Against All Defendants (Doc. 232). The court also **dissolves** the Agreed Temporary

Injunction (Doc. 30).

**Memorandum Opinion and Order – Page 1**

## I.       Introduction

In their Motion, Plaintiffs Orchestrate HR, Inc. ("Orchestrate") and Vivature, Inc. ("Vivature") (collectively, "Plaintiffs") argue that Defendants Anthony L. Trombetta ("Trombetta"), The Borden-Perlman Insurance Agency, Inc. ("BP"), Kelly Myers ("Myers"), and Dave Icenhower ("Icenhower") (collectively, "Defendants") should be held in civil contempt for violations of Agreed Temporary Restraining Orders and an Agreed Temporary Injunction entered by former United States Chief District Judge Jorge A. Solis ("Judge Solis").  On March 28, 2016, Magistrate Judge David L. Horan entered Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 299) in which he certified facts, that in his opinion, establish by clear and convincing evidence that Trombetta, BP, and Myers violated orders entered by Judge Solis.  The magistrate judge, therefore, recommended that Trombetta, BP, and Myers should be cited to appear before Judge Solis and show cause why they should not be held in civil contempt for:

> violating the Court's October 7, 2013 Agreed Temporary Injunction, June 21, 2013 Agreed Temporary Restraining Order, and/or August 2, 2013 Agreed Temporary Restraining Order and be subject to appropriate judicial sanctions to coerce compliance with the Court's orders and/or compensate Plaintiffs Orchestrate HR, Inc. and/or Vivature, Inc. for any losses sustained as a result of Anthony Trombetta's, Kelly Myers's, and/or BP's noncompliance.

Report 14.  The magistrate judge, however, did not find facts that constitute clear and convincing evidence of a violation by Icenhower.  On April 11, 2016, Defendants filed Objections to the Report (Doc. 303).  On  April 21, 2016, Plaintiffs filed their Response to Defendants' Objections to the Report (Doc. 315).  As noted, the Report and this memorandum opinion and order deal only with the civil contempt portion of Plaintiffs' Motion. All other discovery issues raised by Plaintiffs in their Motion were previously decided by the magistrate judge in a separate order.

After considering Plaintiffs' Motion, Defendants' response to the Motion, Plaintiffs' Reply, the Report, the transcript of the proceedings before the magistrate judge regarding the Motion, Defendants' objections to the Report, Plaintiffs' response to Defendants' objections, the orders that are the subject of Plaintiffs' Motion, the parties' evidence, arguments of counsel; and after conducting a de novo hearing and review of the record, the court **accepts** the magistrate judge's findings and conclusion as to Icenhower; **rejects** the magistrate judge's findings and conclusions regarding Defendants' violation of the parties' "Agreed Temporary Injunction"; **rejects** the magistrate judge's findings and conclusions regarding Defendants' violations of the Agreed Temporary Restraining Orders; and **denies** Plaintiffs' Motion for Sanctions Against All Defendants (Doc. 232).

Further, the Agreed Temporary Injunction fails to comply with the mandatory requirements of Federal Rule of Civil Procedure 65(d)(1) and appears to be no longer necessary.[1] The court, therefore, **dissolves** the Agreed Temporary Injunction.  If Plaintiffs wish to file an application for preliminary injunctive relief for the court's consideration, the application must satisfy all of the requirements for a preliminary injunction under Rule 65 and applicable law.

## II.    Factual and Procedural Background

The dispute in this case arises from noncompete and confidentiality employment agreements that were entered between Trombetta and his former employer Orchestrate on July 13, 2011, and

---

[1] The prohibition in the noncompete agreement between Trombetta and Orchestrate against pursuing Orchestrate's clients expired three years after Trombetta left Orchestrate's employment.  Trombetta ceased employment with Orchestrate in April 2013. Thus, under the terms of the noncompete agreement, the three-year prohibition expired in April 2016, and it is no longer necessary for purposes of this lawsuit to have a preliminary injunction in place to maintain the status quo.  Moreover, as herein explained, the court believes that the parties' confusion or disagreement regarding the scope of the noncompete and confidentiality agreements, the various temporary restraining orders, and the temporary injunction have unnecessarily prolonged this litigation rather than facilitate its resolution.

events that occurred after Trombetta left Orchestrate's employment in April 2013 and joined BP. The case was originally filed by Orchestrate on May 31, 2013, in the 192nd Judicial District Court, Dallas County, Texas, against Trombetta and BP. In its Original Petition, Orchestrate asserted that Trombetta breached the noncompete and confidentiality employment agreements, and that Trombetta and BP defamed Orchestrate and tortiously interfered with Orchestrate's contracts and prospective business relations.  Orchestrate also sought and obtained a temporary restraining order ("TRO") in state court, which was signed May 31, 2013, and included an expiration date of June 14, 2013.

On June 5, 2013, before the state TRO expired, the case was removed to federal court.  On June 21, 2013, Judge Solis entered the parties' Agreed Temporary Restraining Order ("June 21 TRO") (Doc. 15).  The June 21 TRO precludes, among other things, Trombetta, or anyone acting at his direction, from directly or indirectly:

(I)     Knowingly using or disclosing any of Plaintiff's confidential information;

(ii)    Considering as a potential prospect or pursuing, in any form, as a client, directly or indirectly, any Designated Client; "**Designated Client**" means any person or entity named on a separate list entitled "Designated Client List" and kept by the parties;

(iii)   Subject to the provisions of (ii) above and the provisions set forth in the Addendum, which is kept confidential by the parties, knowingly, directly or indirectly attempting to change any agreement between or among any client, agency or insurer and Orchestrate.

June 21 TRO 2.  The June 21 TRO also set a preliminary injunction briefing schedule and states that "[t]his Order shall expire on September 12, 2013 at 5:00 p.m. absent further order by this Court." *Id.* at 4.  On July 12, 2013, the parties filed a Joint Application for Entry of Third Agreed Temporary Restraining Order (Doc. 17).  Before Judge Solis ruled on this application, the parties filed a Joint Application for Entry of Fourth Agreed Temporary Restraining Order on July 31, 2013 (Doc. 18).

On August 1, 2013, Judge Solis denied both applications (Docs. 17, 18) because the June 21 TRO was still in effect, did not expire until September 12, 2013, and included a preliminary injunction briefing schedule.  On August 2, 2013, the parties filed a Joint Emergency Motion for Reconsideration and Request for Extension of Temporary Restraining Order and Briefing Schedule (Doc. 20), explaining that they were seeking to amend their June 21 TRO to accommodate Orchestrate's counsel, who had been on vacation, and to extend the briefing schedule, so the parties could complete certain discovery beforehand.  Later on the same date, Judge Solis entered the parties' Fourth Agreed Temporary Restraining Order, which contains the same language quoted above and merely extended the preliminary injunction briefing deadlines to October 2013 and expiration date to November 14, 2013, to give the parties additional time to conduct discovery.

On September 20, 2013, Judge Solis entered the parties' Fifth Agreed Temporary Restraining Order ("Fifth Agreed TRO") (Doc. 26), which contains the same quoted language above and merely extended the expiration date and preliminary injunction briefing deadlines.  The court refers herein to the parties' various Agreed Temporary Restraining Orders collectively as "TROs."  On October 3, 2013, the parties filed a Joint Application for Entry of Agreed Temporary Injunction.  On October 7, 2013, Judge Solis entered the parties' "Agreed Temporary Injunction" (Doc. 30),[2] which states that it replaces the Fifth Agreed TRO and shall remain in effect until further court order.  Agreed Temporary Injunction ¶ 11.

---

[2] As explained by the court during the hearing conducted on May 25, 2016, while the parties labeled their agreement as an "Agreed Temporary Injunction," temporary injunctions are used in state court practice, not federal court practice. *See* Tex. R. Civ. P. 680. The Federal Rules of Civil Procedure do not use the term "temporary injunction" but instead use the term "preliminary injunction."  *See* Fed. R. Civ. P. 65. In response to Plaintiffs' concern regarding the effect of the parties incorrectly labeling their agreement as a temporary injunction, the court stated that it would treat the temporary injunction as a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, but would consider separately the confusion expressed by witnesses during the hearing regarding the parties' agreed temporary restraining orders and temporary injunction.

**Memorandum Opinion and Order – Page 5**

On June 2, 2015, Vivature, Inc. was added as a Plaintiff, and Myers and Icenhower were added as Defendants in conjunction with Plaintiffs' Third Amended Complaint (Doc. 153). According to Plaintiff's Motion for Leave to Amend (Doc. 117), Vivature, Inc. is a wholly owned subsidiary of Orchestrate.  BP sells insurance, and its sports insurance department sells insurance that covers varsity athlete injuries to colleges around the country.  Myers is the manager of BP's sports insurance department.  Trombetta joined BP in May 2013 to sell what he refers to as secondary athletic insurance to colleges.

On January 18, 2016, Plaintiffs moved for sanctions against Trombetta, BP, Myers, and Icenhower for alleged violations of the Agreed Temporary Restraining Orders and Injunction.  On February 18, 2016, after briefing on Plaintiffs' Motion was complete, the magistrate judge conducted a hearing on the Motion.  On March 28, 2016, the magistrate judge issued his Report and, pursuant to 28 U.S.C. § 636(e)(6), certified facts that, in his opinion, constitute contempt by Trombetta, BP, and Myers but not Icenhower.  One month later, the case was reassigned to this court on April 27, 2016.

On May 13, 2016, the court entered a show cause order setting for hearing Plaintiff's Motion and requiring Trombetta, BP, and Myers to  appear before the court and show cause why they should not should not be held in civil contempt of the October 7, 2013 Agreed Temporary Injunction; the June 21, 2013 Agreed Temporary Restraining Order; and/or the August 2, 2013 Agreed Temporary Restraining Order entered by Judge Solis, as recommended by the magistrate judge.  Pursuant to section 636(e), the court conducted a de novo hearing on May 25, 2016, during which the parties presented evidence, testimony, and arguments of counsel.  *See* 28 U.S.C. § 636(e)(6)(B)(iii) (After the magistrate judge certifies facts regarding the act or conduct that constitutes a civil contempt,

"[t]he district judge shall thereupon hear the evidence as to the act or conduct complained of" and

sanction the offending person or party if punishment is warranted.).

## III.   Civil Contempt Standard

"[S]erious penalties can befall those who are found to be in contempt of court injunctions."

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of*

*Alameda Cnty.*, 415 U.S. 423, 444 (1974).   Thus, one basic principle built into Federal Rule of Civil

Procedure 65 applicable to every injunction and restraining order is that "those against whom an

injunction is issued should receive fair and precisely drawn notice of what the injunction actually

prohibits." *Id.* (footnote omitted).   In this regard, Rule 65 specifically provides and requires as

follows: "Every order granting an injunction and every restraining order must . . . state its terms

specifically; and describe in reasonable detail—and not by referring to the complaint or other

document—the act or acts restrained or required."   Fed. R. Civ. P. 65(d)(1).   As explained by the

Supreme Court in *Granny Goose Foods*:

> "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. . . . The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension."

*Granny Goose Foods, Inc.*, 415 U.S. at 444 (quoting *International Longshoremen's Ass'n v.*

*Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)); *Martin v. Trinity Indus., Inc.*, 959 F.2d

45, 47 (5th Cir. 1992) ("Contempt is committed only if a person violates a court order requiring in

specific and definite language that a person do or refrain from doing an act.").   As the movants,

Plaintiffs have the burden of establishing by clear and convincing evidence that: (1) "a court order

was in effect"; (2) the order required certain conduct by Defendants; and (3) Defendants failed to

comply with the court's order. *Id.*  Clear and convincing evidence is evidence that "produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted). "After the movant has shown a *prima facie* case, the respondent can defend against it by showing a present inability to comply with the subpoena or order." *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

For the reasons that follow, the court **concludes** that the Agreed Temporary Restraining Orders and Injunction that form the bases of Plaintiffs' Motion do not comply with Rule 65 and are not sufficiently specific to put Defendants on notice of the conduct prohibited.  In addition, Plaintiffs have not met their burden of establishing by clear and convincing evidence that the orders drafted by the parties and entered by the court prohibit the conduct in question, or that Defendants' conduct violated the orders.

## IV.   Discussion

### A.   Alleged Violations of Agreed Temporary Restraining Orders

Plaintiffs' Motion for alleged violations of the Agreed Temporary Restraining Orders is based on their contention that, notwithstanding the Addendum, which is referenced in all of the restraining orders, Defendants, and in particular Trombetta, engaged in conduct in 2013 in relation to Sam Houston State University, University of Louisiana Lafayette, and Savannah State University that violates the express language of paragraph 6(ii) of the Agreed Temporary Restraining Orders, which prohibited Trombetta or anyone acting at his direction from directly or indirectly:

> Considering as a potential prospect or pursuing, in any form, as a client, directly or indirectly, any Designated Client; "**Designated Client**" means any person or entity

named on a separate list entitled "Designated Client List" and kept confidential by
the parties.

*See, e.g.*, June 21 TRO 2.  Plaintiffs contend that the Addendum only applies to paragraph 6(iii) of

the Agreed Temporary Restraining Orders, the only paragraph that references the Addendum. During

the hearing before the magistrate judge, Defendants argued that any conduct in 2013 with respect

to these schools did not violate the Agreed Temporary Restraining Orders in place at the time

because these schools are included in the 25 schools in the Addendum that are excepted from the 207

clients in the Designated Client List.[3]

The magistrate judge agreed with Plaintiffs' interpretation of the Agreed Temporary

Restraining Orders and Addendum based on the following reasoning:

> [A]t the hearing, Defendants' counsel argued that Sam Houston State University,
> University of Louisiana Lafayette, and Savannah State University are excepted from
> the Designated Client List by an addendum to the list. This argument was not made
> in Defendants' written response, and it appears that no one other then Defendants'
> new counsel interprets the addendum to carve out schools from those on the
> Designated Client List that Defendants were prohibited from contacting.  Instead, the
> addendum is made subject to the prohibition of "[c]onsidering as a potential prospect
> or pursuing, in any form, as a client, directly or indirectly, any Designated Client;
> 'Designated Client' means any person or entity named on a separate list entitled
> 'Designated Client List' and kept by the parties," and the addendum was deleted from
> the Agreed Temporary Injunction.  Accordingly, the undersigned concludes that the
> 25 schools listed on the addendum were not excepted out of the Designated Client
> List of schools that neither Mr. Trombetta nor BP could contact.

Report 10 (citations to record omitted).  The magistrate judge then determined that the following

certified facts constituted a violation of the Agreed Temporary Restraining Orders:

> In July 2013, during the time period in which the June 12, 2013 Agreed
> Temporary Restraining Order was in effect, Anthony Trombetta submitted a bid or
> proposal to Sam Houston State University, a school that was included in the

---

[3] Defendants raised other arguments in response to Plaintiffs' Motion that the court need not address because
it determines that Plantiffs' Motion fails for other reasons.

**Memorandum Opinion and Order – Page 9**

Designated Client List. In August 2013, during the time when the June 12, 2013 Agreed Temporary Restraining Order and the August 2, 2013 Agreed Temporary Restraining Order were in effect, Mr. Trombetta was working on getting business from the University of Louisiana Lafayette, another school that was on the Designated Client List.

*Id.* at 12.  The Report does not address the parties' contentions regarding Trombetta's contacts with Savannah State University on June 21, 2013, that were addressed during the hearing before this court on May 25, 2016.  During the May 25, 2016 hearing, Defendants also presented evidence of the parties' negotiations of the Agreed Temporary Restraining Orders and Addendum that occurred before the entry of the June 21 TRO to support their interpretation of the TROs and argument that no violation of the Agreed Temporary Restraining Orders occurred because, although the three schools are included in the Designated Client List, the parties agreed to except these three schools and others from the Designated Client List as set forth in the Addendum.

Plaintiffs contend, on one hand, that Defendants' evidence of the parties' negotiations is parol evidence and cannot be used to create an ambiguity in the parties' agreement when none exists.  On the other hand, Plaintiffs contend that the court should take into consideration the reasons why the parties' believed it was necessary to create the Addendum as an accommodation to BP.

The court determines that it is not necessary for it to consider Defendants' evidence of the parties' negotiations or Plaintiffs' assertions regarding the basis for creating the Addendum because the court concludes that, when the Temporary Restraining Orders, Designated Client List, and Addendum are read together, rather than in isolation, it is clear from the plain language of the documents that the parties intended to except or exclude the 25 schools listed in the Addendum from the Designated Client List as far as the Temporary Restraining Orders entered by Judge Solis were concerned.

**Memorandum Opinion and Order – Page 10**

The Addendum provides in pertinent part as follows:

> Mr. Trombetta, Borden-Perlman, and Orchestrate HR, without prejudice and without waiving any rights or claims and for the exclusive purpose of negotiating the agreed upon TRO, have agreed as follows:
>
> Mr. Trombetta will agree to the "Designated Client List" which is attached to the email of Jose Portela, Esq. on June 6, 2013 at 3:29 p.m. EST, with the exception of the following 25 colleges:
>
> Category 1—Schools who Borden-Perlman claims they have long-standing contractual insurance relationships (before any relationship between BP and Orchestrate)
>
> 1.     Sam Houston State University
> . . .
> 6.     University of Louisiana—Lafayette
>
> Category 2—Schools that Borden-Perlman Claims Are Not Current Orchestrate Customers
> . . .
>
> Category 3—Schools that Borden-Perlman Claims Are Only Orchestrate Billing & Software Customers
>
> 15.    Savannah State University

Defs.' Ex. 2. The parties do not dispute that their agreement regarding the Temporary Restraining Orders include the Addendum and the Designated Client List referenced in the agreed orders. They simply dispute how these documents and their agreement should be interpreted. When considering all three documents together, including the language quoted above from the Addendum, it is clear that the parties intended that the Designated Client List would not include the 25 schools in the Addendum for purposes of the Agreed Temporary Restraining Orders. Thus, paragraphs 6(ii) and 6(iii) of the Agreed Temporary Restraining Orders, which refer directly and indirectly to the Designated Client List, do not apply to the 25 schools listed in the Addendum. To construe these paragraphs in the manner recommended by Plaintiffs and the magistrate judge would require the

court to completely disregard the language in the Addendum that "Mr. Trombetta will agree to the "Designated Client List" . . . with the exception of the following 25 colleges." *Id.*

Because the parties agreed to except or exclude from the Designated Client List the 25 schools listed in the Addendum, including Sam Houston State University, University of Louisiana Lafayette, and Savannah State University, the court concludes that Trombetta's conduct pertaining to these schools was not a violation of paragraph 6(ii) of the Agreed Temporary Restraining Orders as contended by Plaintiffs. Accordingly, Plaintiffs have not shown by clear and convincing evidence that an order was in effect that precluded Defendants' conduct and that Defendants failed to comply with a court order. *See Travelhost, Inc.*, 68 F.3d at 961.

Plaintiffs contend in response to Defendants' objections that the court should not consider Defendants' "new contention" regarding the Addendum because it was not included in their response to Plaintiffs' Motion. Pls.' Resp. to Defs'. Obj. 4 (Doc. 315). For support, Plaintiffs cite *Performance Autoplex II Limited v. Mid-Continent Casualty Company*, 322 F.3d 847, 862 (5th Cir. 2003) (per curiam), for the proposition that a district court should not consider new evidence submitted by a party in objecting to a magistrate judge's findings and recommendation. This argument is without merit. As a preliminary matter, the argument exalts form over substance. It is also misleading, as the issue was clearly presented to the magistrate judge and addressed in the magistrate judge's Report. As discussed below, the import and relevance of the Addendum in interpreting the TROs was also raised by Defendants in Trombetta's deposition.

Additionally, *Performance Autoplex II Limited v. Mid-Continent Casualty Company* involved section 636(b), not 636(e), and, while the court in that case stated that it was improper for parties to "use the magistrate judge as a mere sounding-board for the sufficiency of the evidence," it made

**Memorandum Opinion and Order – Page 12**

clear that the district court has "wide discretion to consider and reconsider the magistrate judge's recommendation," and "[i]n the course of performing its open-ended review, the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge." *Id.* Further, even if the court were to agree with Plaintiffs that Defendants' argument and evidence regarding the Addendum are "new," the language in section 636(e)(6)(B)(iii) does not on its face preclude the court from considering new evidence. Moreover, the court has not found and the parties have not presented any binding authority that precludes it from hearing new evidence in deciding Plaintiffs' Motion for contempt.

Plaintiffs also contend that, while Trombetta initially testified in his deposition that he did not violate the TRO, he ultimately admitted that he and BP "repeatedly violated the TRO," that "he committed perjury, that [BP's Rule 30(b)(6) representative Jeff] Perlman had committed perjury, that Myers had submitted false documents, that Liser [, Defendants' attorney] had submitted a false affidavit. Pls.' Mot. 19. Plaintiffs assert in their Motion that e-mails produced by Defendants shortly before Trombetta's deposition show that Trombetta contacted several schools to obtain business in violation of the TROs. It is unclear from the Motion, however, which e-mails, according to Plaintiffs, show that Trombetta, BP, or Meyers violated the TROs. Instead of describing the specific conduct that Defendants engaged in, citing to relevant evidence, and explaining why they believe that the evidence shows that Defendants violated the TROs or Agreed Temporary Injunction, Plaintiffs spend an inordinate amount of time and effort in describing what they perceive to be an ongoing "campaign of improper behavior" by Defendants. The majority of Plaintiffs' Motion, reply, and response to Defendants' objections with respect to the alleged violations of the TROs and Agreed Temporary Injunction is dedicated to the manner in which Defendants have produced documents in

this case and the veracity of statements made by the parties in connection with the summary judgment motions filed and counsel's communications regarding discovery. Such supposition and drama are entirely unhelpful in assisting the court to determine the bases for Plaintiffs' Motion. Moreover, the court is capable of "looking through the muddy water and seeing if there are any fish." The court will not fall for legal prestidigitation or specious arguments.

Plaintiffs also rely heavily on the deposition of Trombetta to support their Motion. The court, however, found the transcript of Trombetta's deposition testimony and the manner in which the deposition was taken by Plaintiffs' counsel particularly alarming and troubling. Throughout the deposition, Plaintiffs' counsel berated Trombetta and used bullying tactics to "beat down" Trombetta, confused the witness by providing him with a misleading definition of perjury and repeatedly conflating and blurring the distinction between a false or incorrect statement and perjury, and was rude and unprofessional to the witness and opposing counsel. Much of the examination consisted of argument by Plaintiffs' counsel and Plaintiffs' counsel accusing Trombetta and other defense witnesses, including BP's Rule 30(b)(6) representative, of perjury and misconduct rather than asking Trombetta proper questions. At one point during the deposition, the exchange below took place. This conduct, unfortunately, is emblematic of the way Plaintiffs' counsel behaved throughout this deposition.

> Counsel:     You perjured yourself today. You've already said it was a false statement and you swore it was true. You perjured yourself today. You've got to say yes.
>
> Trombetta:   You didn't ask me a question.
>
> Counsel:     You perjured yourself today, question mark.
>
> Trombetta:   I guess I did.

| | |
|---|---|
| Counsel: | You guess or you know?  Don't play games with me, Tony. You did it. |
| Trombetta: | I did. |
| Counsel: | Okay. Jeff Perlman, when he swore that this was accurate, perjured himself, correct? |
| Trombetta: | According to that definition, yes. |
| Counsel: | Definition of perjury? |
| Trombetta: | Yes. |
| Counsel: | Let's see how many times you've committed perjury today, Tony. |

Pls.' App. 262-63 (Doc. 233-1).

Plaintiffs' counsel also led Trombetta to believe that only the language in the TROs was relevant in interpreting the parties' agreement with respect to the TROs and refused to provide him with a copy of the Addendum to review in answering questions.  When Defendants' counsel objected, Plaintiffs' attorney responded with the following condescending and patronizing remarks, "[D]on't interfere. . . . That's just nonsense.  Stop littering my record."  *See id.* at 6-8, 12.  This is but one example of the unpleasantries exchanged between counsel and the witness during the deposition.

Because of the way in which many questions were asked or statements were made by Plaintiffs' counsel, much of Trombetta's deposition testimony relied on by Plaintiffs is tentative at best.  Trombetta qualified most of his answers to questions of whether something was a "false statement," "false affidavit," perjury, or violation of a TRO by responding "I guess. He's copied on it," "Looks like it," "I don't know if that's a lie . . . Could have been a mistake," and "I don't think it was intentional."  *See id.* at 240, 241, 259, 260, 262, 264, 265, 294.  Additionally, while Trombetta

ultimately made a number of concessions when pressed, he appears to have done so because Plaintiffs' counsel repeatedly accused him of playing games and threatened to persist until he got the answer he wanted.  Moreover, Plaintiffs' counsel led Trombetta to believe that only the language in the TROs, not the Addendum, was relevant.  As a result, the transcript from this deposition has little utility for any purpose. This type of browbeating and intimidation is not a recipe or methodology to find the truth or produce free-flowing information.  "Information" or "evidence" obtained in this manner falls woefully short of meeting the strict standard of "clear and convincing" evidence, and thus, cannot serve as the basis for holding a person or party in civil contempt.  Stated another way, the tentative nature of the deposition testimony provides only a tenuous or nonexistent basis for holding a person in civil contempt of court and falls far below the legal standard of "clear and convincing" evidence.

The conduct of Plaintiffs' counsel was similarly confrontational during the May 25, 2016 hearing and in some regards totally unprofessional.  The court only allowed Plaintiffs' counsel's approach because no jury was present and it wanted to get the full flavor of the acrimony and toxicity that exists in this case.  Plaintiffs' presentation of evidence during the hearing consisted primarily of improper questioning of witnesses and accusing defense witnesses of committing perjury and making false statements without laying a proper foundation.  He repeatedly asked witnesses to compare the prior testimony of other witnesses without first laying the proper predicate, assumed facts not in evidence, took prior testimony out of context, testified, and asked multifarious and convoluted questions that witnesses and even the court had difficulty understanding.  Overall, the court found Plaintiffs' arguments and presentation of evidence unhelpful and is troubled by the tone that this litigation has taken.

**Memorandum Opinion and Order – Page 16**

Litigation is not a game; rather, it is a search for the truth and an effort to obtain justice. *See Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) ("A trial is a proceeding designed to be a search for the truth. . . . Essential to the endeavor is an opportunity for the parties through their lawyers to present information in a manner that is comprehensible to a judge or jury. In this respect, the role played by lawyers in a trial is paramount."); *Hall v. Freese*, 735 F.2d 956, 961-62 (5th Cir. 1984) ("[T]he sort of strategy employed by defense counsel has no place in the federal district court. Creating a hostile atmosphere toward parties . . . contributes nothing—less than nothing—toward the search for justice and fairness and truth. Nor does deliberately misstating the record or arguing outside the record serve any remote purpose for which a trial is intended."); *Bintliff v. United States*, 462 F.2d 403, 407 (5th Cir. 1972) ("[L]itigation is not a game, but a proof and decision-making process.").

This is not to say that Defendants are completely blameless, as Plaintiffs have prevailed on *some or parts* of their discovery motions.  Plaintiffs, however, have used the parties' discovery disputes as a means of impugning Defendants and their counsel's integrity and resorted to using and unnecessarily cluttering the record with counsel's e-mails and communications as evidence. If Defendants have not produced documents that Plaintiffs believe fall within their requests for production, a motion to compel those documents is all that is necessary.  Plaintiffs instead have unnecessarily turned this case and every discovery dispute into a witch hunt and satellite litigation by filing multiple motions for sanctions and accusing Defendants, Defendants' designated representatives, the individual Defendants, and their counsel of perjury based on allegedly "false statements." This has to and will stop.  The jig is up!

**Memorandum Opinion and Order – Page 17**

Finally, the court determines that Plaintiffs' Motion with respect to the alleged violation of the TROs fails for an additional reason.  The Agreed Restraining Orders that form the basis for Plaintiffs' Motion violate Rule 65(d)(1)'s express prohibition against reference to other documents by referring to a number of documents, including prior restraining orders, the Designated Client List, and the noncompete and confidentiality employment agreements, the scope and meaning of which are hotly contested in this case.  The reason for this prohibition is quite simple: Due process, at a minimum, mandates that a person be put on sufficient notice of the conduct or acts that are prohibited, restrained, or required, and the most effective and practical way to accomplish this objective is to require the operative language to be set forth in the document granting injunctive relief.  Moreover, it is readily apparent from the deposition testimony in this case that the reference to other documents in the Agreed Temporary Restraining Orders and Injunction has caused confusion, resulted in litigation that is not necessary for the resolution of Plaintiffs' claims, and unnecessarily delayed the proceedings in this case.  If the TROs and Agreed Temporary Injunction had complied with Rule 65(d)(1), the court most likely would not have had to intervene and expend scarce judicial resources on this matter.  Accordingly, for all of these reasons, the court **rejects** the magistrate judge's findings and conclusions regarding Defendants' violations of the Agreed Temporary Restraining Orders, and **denies** the Motion based on alleged violations of the Agreed Temporary Restraining Orders.  The court addresses separately below the magistrate judge's findings and conclusions regarding Icenhower.

### B.      Alleged Violations of Agreed Temporary Injunction

In the proceedings before the magistrate judge, Plaintiffs relied on approximately one dozen e-mails that were exchanged between March 6, 2015, and April 30, 2015 to support their contention

that Defendants violated the Agreed Temporary Injunction by targeting the following five Florida schools that are included in the "Designated Client List" referenced in the Agreed Temporary Injunction: University of Central Florida, University of South Florida, Florida Atlantic, Florida International, and University of Miami.  Unlike the TROs, there is no reference in the Agreed Temporary Injunction to the Addendum. The court, nevertheless, concludes that Plaintiffs' Motion regarding alleged violations of the Agreed Temporary Injunction should be denied for other reasons.

First, like the Agreed Restraining Orders, the Agreed Temporary Injunction drafted by the parties violates Rule 65(d)(1) because it refers to a number of other documents, and, as a result, has caused undue confusion and unnecessary litigation that have delayed the resolution of the parties' claims and defenses.

Second, Plaintiffs' Motion seeks to hold Trombetta, BP, and Meyers in contempt for alleged violations of the Agreed Temporary Injunction because they targeted five Florida schools, which Plaintiffs assert are "the 5 biggest Plaintiffs' Florida clients listed on the Designated Client list" and "clients of Plaintiffs for which the TI was very clear that Trombetta was not supposed to be dealing with directly or indirectly in any form." Pls.' Mot. 20-21.  In other words, it is clear from Plaintiffs' Motion and supporting documentation that they contend Defendants violated the TROs and Agreed Temporary Injunction by contacting and soliciting business from Orchestrate's *and Vivature's clients*. The employment agreements, restraining orders, and injunction order in this case, however, only pertain to clients of Orchestrate, and it is not entirely clear from Plaintiffs' e-mail evidence of Defendants' alleged violations of the Agreed Temporary Injunction, which only refers to Vivature, whether these five schools are clients of Orchestrate, Vivature, or both.  *See* Pls.' Ex. DD. Moreover, Vivature was not added as a party to this lawsuit until June 2, 2015, *after* the alleged

**Memorandum Opinion and Order – Page 19**

violations of the Agreed Temporary Injunction occurred.  Further, Orchestrate acknowledges in its

Motion for Leave to Amend (Doc. 117) that permission to add Vivature as a party was sought

because the parties dispute whether Orchestrate is entitled to recover for alleged damages suffered

by Vivature.

Although this issue does not appear to have been specifically addressed in the parties' briefs,

a related issue was raised in the hearing conducted by the magistrate judge whether the prohibition

against Defendants contacting Orchestrate's current or former employees during the pendency of this

case also applies to the employees of its subsidiary Vivature.  Plaintiffs took the position that the

prohibition applies to Vivature and contended that any contact by Defendants with Vivature

employees was intentional and not the result of mistake.  Plaintiffs also stated that it was their

understanding that a "new agreement" had been reached by the parties as of that date to include

Vivature employees and asked the court to enter an order to that effect.  While the issue regarding

Vivature arose during the hearing conducted by the magistrate judge in another context, it

underscores and confirms the need to ensure that there is no confusion in this regard with respect to

the conduct that is prohibited by the Agreed Temporary Restraining Orders and Injunction.

As the movants, Plaintiffs have the initial burden to prove that Defendants' actions violated

a court order requiring, in specific and definite language, the prohibited conduct.  *Martin*, 959 F.2d

at 47.  Neither the Agreed Temporary Injunction nor the documents referred to in the Agreed

Temporary Injunction mention Vivature and, thus, are insufficient as written to extend to Vivature's

clients.  Accordingly, because Plaintiffs' Motion is based in some respect, the extent of which is not

entirely clear, on Defendants' conduct with respect to Vivature's clients, the court concludes, for this

reason and because the Agreed Temporary Injunction  violates Rule 65(d), that Plaintiffs have not

satisfied their heavy burden as the movants of showing by clear and convincing evidence that the Agreed Temporary Injunction precluded the conduct at issue or that Defendants' conduct violated the Agreed Temporary Injunction. The court, therefore, **rejects** the magistrate judge's findings and conclusions regarding Defendants' violation of the "Agreed Temporary Injunction," and **denies** the Motion for sanctions based on alleged violations of the Agreed Temporary Injunction. The court addresses separately below the magistrate judge's findings and conclusions regarding Icenhower.

Further, the issue of whether employment agreements executed between Trombetta and Orchestrate extend to Vivature or others or were intended to encompass Vivature's clients and confidential information is better left for resolution by summary judgment motion or trial. Because the Agreed Temporary Injunction fails to comply with Federal Rule of Civil Procedure 65(d)(1) and is no longer be necessary, the court hereby **dissolves** the Agreed Temporary Injunction.

### C.   Contempt by Icenhower

While the magistrate judge recommended and certified facts that he believed constituted comtempt by Trombetta, BP, and Myers, he did not find facts that constituted contempt by Icenhower. No objections to the magistrate judge's finding and conclusions as to Icenhower were asserted, and the court, after conducting a de novo review and hearing, concludes that Plaintiffs have not met their burden of establishing by clear and convincing evidence that Icenhower violated the court's orders. Accordingly, the court **accepts** the magistrate judge's findings and conclusion as to Icenhower, and **denies** Plaintiffs' Motion with respect to Icenhower.

### V.   Conclusion

For the reasons stated, the court **accepts in part and rejects in part** magistrate judge's findings and conclusions (Doc. 299). Specifically, the court **accepts** the magistrate judge's findings

**Memorandum Opinion and Order – Page 21**

and conclusions as to Icenhower, which were not objected to by Plaintiffs.  The magistrate judge's findings and conclusions are otherwise **rejected.**  Accordingly, the court **denies** Plaintiffs' Motion for Sanctions Against All Defendants (Doc. 232).  The court also **dissolves** the Agreed Temporary Injunction (Doc. 30).

**As a final matter, in light of the contentious and acrimonious nature of this litigation and the morass that has ensued, the court instructs the parties and counsel to be mindful of *Dondi Properties Corporation v. Commerce Savings & Loan Association*, 121 F.R.D. 284 (N.D. Tex. 1988), and its far-reaching implications.  Attorneys can be zealous advocates on behalf of their clients without being unprofessional.  Zealous advocacy and civility are not mutually exclusive.  In the future, if the court determines that there has been a *Dondi* violation, the sanctions machine will be in full mode against the offending party, attorney, or both.**

**It is so ordered** this 8th day of June, 2016.

*Sam A. Lindsay*

Sam A. Lindsay
United States District Judge