## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

ORCHESTRATEHR, INC. and
VIVATURE, INC.                                                                    **PLAINTIFFS**

**v.**                                                        **CIVIL ACTION NO. 3:13-CV-2110-KS-BH**

ANTHONY L. TROMBETTA,
THE BORDEN-PERLMAN INSURANCE AGENCY,
KELLY MYERS, and DAVE ICENHOWER                                      **DEFENDANTS**


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Motion to Strike New Arguments and Evidence in

Trombetta's Reply ("Motion to Strike") [300] and the Motion to Disqualify Defendants' Counsel

("Motion to Disqualify") [301] filed by Plaintiffs OrchestrateHR, Inc. and Vivature, Inc.

(collectively "Plaintiffs"), the Motion for Summary Judgment [271] filed by Defendant Anthony L.

Trombetta ("Trombetta"), the Motion for Summary Judgment [308] filed by Defendants Kelly

Myers ("Myers"), Dave Icenhower ("Icenhower"), and the Borden-Perlman Insurance Agency

("BP"), and the Motion to Strike Testimony [307] filed by Defendants Trombetta, Myers,

Icenhower, and BP (collectively "Defendants").  After considering the submissions of the parties,

the record, and the applicable law, the Court finds the following:

    1.      the Motion to Strike [300] is well taken and should be granted;

    2.      the Motion to Disqualify [301] is not well taken and should be denied;

    3.      Trombetta's Motion for Summary Judgment [271] is not well taken and should be

          denied;

    4.      Myers, Icenhower, and BP's Motion for Summary Judgment [308] should be granted

          in part and denied in part; and

5.      Defendants' Motion to Strike Testimony [307] should be granted in part and denied in part.

## I.  BACKGROUND

Plaintiff Orchestrate originally filed this action in Texas state court on June 5, 2013, against Defendants Trombetta and BP.  Plaintiff Vivature was added to the suit in the Amended Complaint [153] filed on June 2, 2015, as was Defendants Myers and Icenhower.

In the Amended Complaint [153], Plaintiffs bring multiple claims against Defendants stemming from Trombetta's former employment with Orchestrate and from business arrangements that Plaintiffs previously had with BP.  Specifically, Plaintiffs claim that Trombetta violated the non-compete agreement in which he agreed not to attempt to solicit their current clients in the sports medicine insurance industry for three years after the termination of his employment.  Plaintiffs also claim that he breached the confidentiality agreement he entered into at the start of his employment.

Plaintiffs also claim that BP breached the confidentiality agreement between it and Orchestrate, and claim that all Defendants conspired together to defame Orchestrate and Vivature in the sports medicine insurance industry in order to interfere with their business.

Plaintiffs bring the following claims against Defendants:  (I) breach of confidentiality agreement against Trombetta; (ii) breach of the non-compete agreement against Trombetta; (iii) tortious interference with contract against all Defendants; (iv) tortious interference with prospective business relations against all Defendants; (v) defamation against all Defendants; (vi) negligence against all Defendants; (vii) breach of contract against BP; (viii) unfair competition against BP; (ix) fraud against BP and Myers; (x) negligent misrepresentation against BP and Myers; (xi) unjust enrichment against BP; (xii) breach of fiduciary duty against Trombetta; and (xiii) aiding and abetting breach of fiduciary duty against BP, Icenhower, and Myers.

## II.  MOTION TO STRIKE [300]

Plaintiffs claim that, because Trombetta introduced new evidence and arguments in his reply to their opposition to his Motion for Summary Judgment [271], this evidence and these arguments should be stricken.  Alternatively, if the Court does not strike them, Plaintiffs argue that they should be given the opportunity to file a sur-reply.  The Fifth Circuit has said that a district court has discretion to rely on new evidence and arguments presented for the first time in a reply brief, but must "give the non-movant an adequate opportunity to respond prior to ruling."  *Vais Arms, Inc. v. Vai*, 383 F.3d 287, 292 (5th Cir. 2004) (quoting *S.W. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 545 (5th Cir. 2003)).

The Court would note that this motion has been pending for nearly six months before the case was transferred to the undersigned judge, and it sees no reason to prolong a ruling on this motion by allowing for the filing of a sur-reply.  Furthermore, from the proposed response attached to Plaintiffs' Motion to Strike [300], it appears that Plaintiffs would be able to counter Trombetta's evidence that he had no dealings with some of Plaintiffs' clients with evidence that he did.  (Motion to Strike [300], Exhibit 1.)  Given that the burden is on Trombetta to establish that there is no genuine issue of fact and that summary judgment is appropriate, the evidence and arguments introduced in his reply brief should properly have been introduced in his original motion.  The Court will therefore **grant** Defendants' Motion to Strike [300].

## III. MOTIONS FOR SUMMARY JUDGMENT [271][308]

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial

3

ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## B.    Trombetta's Motion for Partial Summary Judgment [271]

4

Trombetta argues that the non-compete covenant in the Employment Agreement is unenforceable as a matter of law.  Under Texas law, for a covenant not to compete to be enforceable, it must (1) be "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made" and (2) "contain[] limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee."  Tex. Bus. & Com. Code. Ann. § 15.50(a).  Trombetta argues that the non-compete covenant between him and Defendants does not meet either of these requirements.

### 1.    Otherwise Enforceable Agreement

Parties agree that the Employee Confidentiality Agreement, if a valid contract, would serve as the "otherwise enforceable agreement" required by Texas law.  Trombetta, however, argues that the Employee Confidentiality Agreement is not an otherwise enforceable agreement because Plaintiffs never supplied him with confidential information, making the agreement between them illusory.

Trombetta states that the consideration given for the Employee Confidentiality Agreement was an implied promise of making available confidential information, and by not giving any actual confidential information, Plaintiffs failed to provide this consideration.[1]  Trombetta contends that the information disclosed to him such as client lists and "loss runs, plan designs, and sport censuses" were not confidential information.  (Brief in Support [272] at p. 16.)  In support of this contention,

---

[1]This argument assumes that there is no express promise to disclose confidential information by Plaintiffs in the Employee Confidentiality Agreement, which Plaintiffs argue is not the case. However, because the Court ultimately finds sufficient evidence that confidential information was actually disclosed to Trombetta to establish consideration and to form an enforceable agreement, the Court's analysis will center only on the implied promise.

Trombetta cites only his own declaration as evidence.  Plaintiffs, however, point to the language of the Employee Confidentiality Agreement, which defines confidential information as "any information of any kind, nature, or description concerning any matters affecting or relating to Employee's services for COMPANY, the business or operations of COMPANY, and/or the products, plans, pricing models, customer lists, marketing plans, processes, or other data of COMPANY," (Appx. [288] at p. 26), and also to Trombetta's own testimony, which stated that he did receive confidential information.  (*Id.* at pp. 81-82.)  For example, in his deposition, Trombetta stated that he did "kn[o]w for a fact the client list was confidential."  (*Id.* at p. 81.)  The Court therefore finds that a reasonable jury, when viewing the evidence in the light most favorable to Plaintiffs as the nonmovants, could find that the Employee Confidentiality Agreement was adequately supported by the consideration of the promise of access to confidential information and was consequently an enforceable agreement.  *See Sierra Club*, 627 F.3d at 138.

## 2. Reasonable Limitations

Covenants not to compete must "contain[] limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee."  Tex. Bus. & Com. Code. Ann. § 15.50(a).  The non-compete covenant in this case states that Plaintiffs' clients "shall not be considered as a potential prospect or pursued as a client" for three years after employment is terminated, and specifically prohibits "a direct or indirect attempt to change agreement between the client, agency and any insurer by the agent."  (Appx. [288] at p. 20.)

The Court would first note that "[t]wo to five years has repeatedly been held as a reasonable time in a noncompetition agreement."  *Gallagher Healthcare Ins. Servs. v. Voelsang*, 312 S.W.3d 640, 655 (Tex. App. 2009) (citations omitted).  Trombetta attempts to argue, again, citing only to

6

his own declaration,[2] that the restraint is unreasonable because insurance policies of this type are subject to renewal every year and that this subsequently imposes an undue hardship on his livelihood.  However, because the Court views the facts in the light most favorable to the nonmovant on summary judgment, *see Sierra Club*, 627 F.3d at 138, it accepts as true Plaintiffs' testimony that their "contracts are usually five years, a few are three years, and just a couple of them are one year . . . , but most are five-year contracts."  (Appx. [288] at p. 103.)  Furthermore, the court in *Gallagher* held that a two-year restraint was reasonable and did not impose an undue hardship even when the insurance contracts did only last one year.  312 S.W.3d at 655.  The Court similarly does not find that a three -year restraint to be unreasonable when the contracts are typically for longer durations.

Parties do not dispute that there is no specific geographical limit in the non-compete covenant.  However, Texas courts have held that "[t]he use of a customer list as an alternative to setting a specific geographical limit is a reasonable means of enforcing a covenant not to compete." *Stocks v. Banner Am. Corp.*, 599 S.W.2d 665, 668 (Tex. Civ. App. 1990); *see also Salas v. Chris Christensen Sys., Inc.*, No. 10-11-00107-CV, 2011 WL 4089999, at *19 (Tex. App. Sept. 14, 2011); *Gallagher*, 312 S.W.3d at 654-655.  Because the non-compete covenant is explicitly limited to Plaintiffs' current customers, the Court finds that this limitation serves as a substitute for a geographical limit.

The Court also finds that the scope of the activities restrained is reasonable.  The Employee Agreement specifically prohibits Trombetta from attempting to directly or indirectly interfere with the relationship between Plaintiffs and their current clients.  (*See* Appx. [288] at p. 20.)  Trombetta

---

[2]Trombetta mistakenly cites the wrong page number of his Appendix [273], directing the Court to an agreed temporary injunction issued in March 2012.  The facts he refers to in his brief, though, are found in the preceding two pages of the Appendix [273], which are the last two pages of his declaration.

attempts to argue that the non-compete covenant is overbroad because it prevents him from soliciting clients he has had no contact with, but he has introduced no evidence that there is any client with which he has had no contact.[3]  The Court therefore does not find that the non-compete agreement prohibited an unreasonable scope of activities.

Because all the requirements for an enforceable covenant not to compete under Texas law can be met on Plaintiffs' evidence, the Court finds that the non-compete agreement is enforceable. Since all of Trombetta's other arguments are based in the unenforceability of the agreement, The Court will **deny** Trombetta's Motion for Summary Judgment [271] in its entirety.

### C.     Myers, Icenhower, and BP's Motion for Summary Judgment [308]

#### 1.     Statute of Limitations

Defendants[4] argue that claims for defamation, tortious interference with contract, and tortious interference with business relations against Icenhower and Myers are barred by the one-year statute of limitations for defamation.[5]  Icenhower and Myers were first proposed as defendants in this action

---

[3]Trombetta attempted to introduce such evidence in his reply brief, but as addressed above, *see supra* Part II, the Court has found that this evidence should be stricken from the record as not properly before the Court.  Furthermore, even if this evidence was allowed to stand, Plaintiffs would be able to submit sufficient evidence to establish that there is a genuine issue of fact on this issue and thereby defeat summary judgment.

[4]For the purposes of this section, the collective term "Defendants" refers to BP, Icenhower, and Myers, and not to Trombetta.

[5]Section 16.002(a) of the Texas Civil Practice and Remedies Code imposes a one-year statute of limitations on defamation claims.  Plaintiffs' tortious interference claims are both based on alleged defamatory statements made by Icenhower and Myers.  Both the Fifth Circuit and the Texas Supreme Court have held that the one-year statute of limitations for defamation claims applies to tortious interference claims based on defamatory statements.  *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146-47 (5th Cir. 2007); *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014).

in Plaintiffs' Motion for Leave to File Third Amended Complaint filed on March 30, 2015.[6]  All

defamatory statements in connection to these claims, Defendants argue, have been alleged to occur

prior to March 30, 2014.  Therefore, Defendants contend that these claims are barred as untimely

and should be dismissed.

Plaintiffs do not argue that the one-year statute of limitations does not apply to these claims,

nor do they argue that the limitation period should be tolled for any equitable reason.  Rather,

Plaintiffs argue only that the claims against Icenhower and Myers relate back to the original claims

brought in this action under Federal Rule of Civil Procedure 15(c), which would make them timely.

Plaintiffs contend that Defendants' assertion that there must be a mistake as to the defendants'

identity in order to relate back is unsupported by caselaw and ignores the policy objectives of Rule

15(c).  However, in making this argument, Plaintiffs ignore the plain language of Rule 15(c).  Rule

15(c) states:

> (1)    An amendment to a pleading relates back to the date of the original pleading
> when:
>
>  . . .
>
>   (B)    the amendment asserts a claim or defense that arose out of the
>          conduct, transaction, or occurrence set out—or attempted to be set
>          out—in the original pleading; or
>
>   (C)    the amendment changes the party or the naming of the party against
>          whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and
>          if . . . the party to be brought in by amendment:
>
>       (i)    received such notice of the action that it will not be
>              prejudiced in defending on the merits; *and*

---

[6]Plaintiffs' Third Amended Complaint was not actually filed until June 2, 2015.

> (ii)   knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.

Fed. R. Civ. P. 15(c) (emphasis added).  Even if the claims against Icenhower and Myers arose out of the same transaction as the previously brought claims, for them to relate back to original filing date, there must have been a mistake as to their identities.  Plaintiffs at no time argue that Icenhower and Myers would have been brought into the action earlier "but for a mistake concerning the proper party's identity."  *See id.*  Therefore, the claims do not relate back to the original filing date of the complaint under Rule 15(c).

Because the claims of defamation, tortious interference with contract, and tortious interference with business relations against Icenhower and Myers do not relate back to the original filing date, they are barred by the applicable statute of limitations.  Defendants' Motion for Summary Judgment [308] will therefore be **granted** with respect to these claims, and they will be **dismissed with prejudice**.

Defendants also argue that Vivature's claims of defamation, tortious interference with contract, and tortious interference with business relations against Borden-Perlman should also be dismissed for the same reasons.  Vivature was not proposed as a plaintiff in this matter until March 30, 2015.  However, the claims Vivature is asserting are based on the same transactions as Orchestrate's transactions, and relate back to the original filing date pursuant to Rule 15(c)(1)(B).  Defendants' Motion for Summary Judgment [308] will therefore be **denied** with respect to these claims.

### 2.   Aiding and Abetting Trombetta's Breach of Fiduciary Duty

Defendants contend that the claims against them for aiding and abetting Trombetta's alleged breach of fiduciary duty are invalid as a matter of law because Texas law does not recognize such

claims.  However, it is well-established under Texas law that third parties may be liable as a joint tortfeasor where they "knowingly participate[] in the breach of duty of a fiduciary."  *Cox Tex. Newpapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App. 2001) (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)).  Because Texas law does recognize third-party liability for breaches of fiduciary duty, then, the Court will **deny** Defendants' Motion for Summary Judgment [308] with respect to these claims.

### 3.    Tortious Interference with Prospective Business Relations

Defendants argue that the causation and damages elements of Plaintiffs' tortious interference with prospective business relations claim is deficient.  For Plaintiffs to establish their tortious interference with prospective business relationship claim, they must show that there existed "a reasonable probability that the parties would have entered into a business relationship" but for the actions of Defendants and "actual harm or damage" must have resulted.  *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008) (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 .3d 620, 634 (5th Cir. 2002)) (emphasis omitted).  For a reasonable probability that a business relationship would have been entered, "[m]ore than mere negotiations must have taken place." *Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 132 (Tex. App. 1999) (citing *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 124 (Tex. App. 1997)).

The only evidence adduced by Plaintiffs is their reputation and standing in the insurance industry, as well as the testimony of one school representative stating that it broke off negotiations with Plaintiff to purchase additional insurance.  As stated above, Plaintiffs' claim requires that more than negotiations.  *See Milam*, 989 S.W.2d at 132 (citing *Hill*, 964 S.W.2d at 124).  At no point do Plaintiffs point to any entity which it would have entered into a contractual relationship but-for Defendants actions, instead arguing that, because Defendants actions had an impact on schools it

already had a relationship with and because of its own reputation in the industry, it was "reasonably probable that Orchestrate would have entered into an additional relationship had Defendants not interfered." (Brief in Response [340] at p. 15.) Plaintiffs, however, do not produce any evidence of any additional business relationship which may have been formed absent Defendants' alleged actions. Because Plaintiffs have not produced any other evidence, the Court must find that their tortious interference with prospective business relationship claims are not supported by the evidence and must be **dismissed with prejudice**. *See Brown.*, 663 F.3d at 766 (quoting *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548). Defendants' Motion for Summary Judgment [308] will therefore be **granted** with regards to these claims.

### 4.     Tortious Interference with Existing Contracts

In order to recover under their tortious interference with existing contract claims, Plaintiffs must establish: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that the act was the proximate cause of the plaintiff's damage; and (4) that actual damage or loss occurred." *Hill*, 964 S.W.2d at 109 (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995)). Defendants argue that this claim is deficient for three reasons: (1) some of the contracts have not been produced; (2) proximate cause cannot be shown; and (3) the damages should be limited to the schools actually disclosed during discovery. The Court will address each of these arguments in turn.

### a.     Contracts Not Produced

Defendants argue that Plaintiffs' claim should be limited to the written contracts that were produced in discovery. In order to recover under their tortious interference with existing contracts claim, Plaintiffs must first establish that the existence of each contract allegedly interfered with by Defendants. *See Hill*, 964 S.W.2d at 109. Although Plaintiffs wrongly assert that discovery in this

12

case remains ongoing, discovery was actually due on April 29, 2016, and Defendants' current motion was filed on April 14, 2016. Plaintiffs responded on May 16, 2016, after the discovery deadline had already passed.[7]

Plaintiffs contend that they had contracts with all of the entities listed on their "Global Client List." (*See* Appx. [341-1] at pp. 84-88.) However, Plaintiffs have only provided written contracts for the following schools:[8] Rider University, Sam Houston State University, High Point University, Oklahoma Baptist University, Providence College, Bowie State, Central State, Cleveland State, Davis & Elkins College, Glenville State, Valdosta State University, University of Maryland, University of Arkansas-Pine Bluff, Union College, Tiffin University, Troy University, Texas Christian University, Southern Methodist University, and San Joaquin Delta.

Plaintiffs argue that the contracts they had with some schools were oral contracts, pointing to their Supplemental Disclosures [108] to demonstrate their ongoing business relationships with these schools as proof of these oral agreements. These disclosures show that Plaintiffs did business with the following additional schools: Youngstown State, "Delta,"[9] "Los Rios,"[10] Slippery Rock

---

[7]There are outstanding discovery issues, but none of the documents Plaintiffs seek from Defendants would be proof of their own contracts to which Defendants are not a party. The Court would further note that Plaintiffs have not invoked Federal Rule of Civil Procedure 56(d) and have made no showing "by affidavit or declaration" that essential facts are not available to them to fully oppose Defendants' motion. Additionally, the Court has already considered and denied Plaintiffs' previous request to stay discovery pending resolution of the outstanding discovery issues, finding that the discovery deadline had already passed and there was "no reason to revive it." (*See* Order [338] at p. 2.)

[8]These contracts were not submitted to the Court as exhibits to Defendants' motions. However, parties appear to agree that they have been produced and there is no genuine issue of fact as to their existence.

[9]The Court is unsure whether this is meant to be Delta State University or San Joaquin Delta.

[10]The Court is unsure to which school this identifier refers, as it does not appear to match any entity listed on the Global Client List.

University, Samford University, Christopher Newport University, Rider University, University of Southern Indiana, University of Louisiana-Lafayette, Cuesta College Basic, and Peralta CCD Basic. (*See* Supplemental Disclosures [108-1].)  This evidence is enough for the Court to find that a genuine issue of fact exists as to the existence of these contracts, making summary judgment on the claims pertaining to them inappropriate.

Plaintiffs have produced no evidence of the existence of any contract with any other school. Therefore, any claim based on any such contract must be dismissed.  *See Brown*, 663 F.3d at 766 (quoting *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548).  Plaintiffs have presented evidence of the existence of contracts with the following schools:  Rider University, Sam Houston State University, High Point University, Oklahoma Baptist University, Providence College, Bowie State, Central State, Cleveland State, Davis & Elkins College, Glenville State, Valdosta State University, University of Maryland, University of Arkansas-Pine Bluff, Union College, Tiffin University, Troy University, Texas Christian University, Southern Methodist University, San Joaquin Delta, Youngstown State, Delta State University,[11] "Los Rios," Slippery Rock University, Samford University, Christopher Newport University, Rider University, University of Southern Indiana, University of Louisiana-Lafayette, Cuesta College Basic, and Peralta CCD Basic.  Defendants' Motion for Summary Judgment [308] will therefore be **granted** with regards to Plaintiffs' claims pertaining to contracts with any other school and those claims will be **dismissed with prejudice**.

### b.      Proximate Cause

---

[11]Assuming the identifier "Delta" refers to Delta State University, and not San Joaquin Delta.

Plaintiffs incorrectly argue that it is the burden of Defendants, as the movants, to produce evidence proving no proximate cause exists.  Instead, because the burden of proving causation is the Plaintiffs' burden at trial, Defendants need only show that Plaintiffs have not produced sufficient evidence in discovery to meet this burden in order to win on summary judgment.  *See Brown*, 663 F.3d at 766 (quoting *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548).  Plaintiffs claim that Defendants' defamatory statements caused schools that it had contracted to do business with to breach their contracts.  As laid out in the pleadings, Plaintiffs are accusing Defendants of making these defamatory statements to the universities, causing them to discontinue using Plaintiffs' services.  (*See* Third Amended Complaint [153].)  The only evidence of causation Plaintiffs have put forward are three affidavits from representatives of Rider University, University of Arkansas Pine Bluff, and University of Southern Indiana.  (Appx. [341-2] at pp. 171-82.)  Each of these representatives state that their university stopped doing business with Plaintiffs because of statements made by Defendants.  (*See id.*)  However, no evidence has been produced to establish that Defendants' statements were the cause of any breach of contract by any other school.[12]  Because summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," and because Plaintiffs have the burden to establish causation and have failed to do so, the Court finds the only tortious interference with existing contracts claims that survive Defendants' motion are those claims pertaining to Plaintiffs' contracts with Rider University,

---

[12]Plaintiffs argue that "further discovery will confirm additional schools discontinued their business or contemplated business with Plaintiffs due to Defendants' unlawful interference." (*See* Brief in Opposition [340] at p. 21.)  As the Court previously noted, *see supra* n.7, discovery has concluded in this case, and Plaintiffs have made no showing under Rule 56(d) that there are unavailable essential facts that would defeat Defendants' motion.  This argument, then, is unpersuasive.

University of Arkansas Pine Bluff, and University of Southern Indiana. *See Brown*, 663 F.3d at 766

(quoting *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548).  Defendants' Motion for Summary Judgment

[308] with regards to Plaintiffs' tortious interference with existing contract claims pertaining to all

other schools will be **granted** and those claims **dismissed with prejudice**.

### c.  Limited Damages

Defendants argue that damages should be limited to those schools actually identified by

Plaintiffs during discovery.  It seems obvious to the Court that damages for Plaintiffs' tortious

interference with existing contracts claims should be limited to those damages associated with

contracts that Plaintiffs have actually established existed.[13]  As such, Defendants' Motion for

Summary Judgment [308] will be **granted** with respect to this argument and damages for these

claims will be limited to damages Plaintiffs can show resulted from Defendants' interference with

its contracts with Rider University, University of Arkansas Pine Bluff, and University of Southern

Indiana.

### 5.  Defamation Against BP

Defendants argue that the defamation claim against BP fails as a matter of law because BP

is entitled to qualified privilege and because the statements made were substantially true.  Both

qualified privilege and substantial truth are affirmative defenses, on which the Defendants bear the

burden of proof at trial.

### a.  Qualified Privilege

To succeed on a qualified privilege defense, Defendants must show that the alleged

defamatory statements were "(1) . . . made without malice; (2) concern[ed] a subject matter that is

---

[13]This holding expresses no opinion concerning the damages Plaintiffs claim in connection
with their other causes of action.

of sufficient interest to the author, or be in reference to a duty the author owes; and (3) . . . communicated to another party having a corresponding interest or duty." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 99 (Tex. App. 2003) (citations omitted).  Defendants argue that "[t]he summary judgment proof establishes Defendant Borden-Perlman was an insurance broker for Arch Insurance Company and that Arch Insurance Company instructed Borden-Perlman to make the allegedly defamatory statements to Arch's insured . . . ."  (Brief in Support [309] at p. 26.)  However, Defendants do not cite to any evidence in the record in support of this contention.[14]  They have also failed to argue that they acted without malice, as required to claim the defense of qualified privilege.  Because Defendants have not met their burden in establishing that summary judgment is appropriate on the basis of this defense, their motion will not be granted on this argument.

### b.      Substantially True

Defendants bear the burden to show that the statements made were "substantially true" and not the proper basis of a defamation claim.  *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013).  In their defamation claim, Plaintiffs claim BP employees "communicated a variety of false and misleading statement to numerous universities Orchestrate services."  (Amended Complaint [153] at p. 11.)  Plaintiffs have put forward three affidavits of university representatives as evidence.  Rider University's affidavit states:

> . . . Dave went on and on about how bad Vivature was.

---

[14]Defendants submitted a 195 page Appendix [310] in support of their motion.  However, "[o]n summary judgment review, the party seeking summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim.  The court does not have the duty to sift through the record in search of evidence to support a party's summary judgment."  *United States v. 2000 Mercedes S430*, No. 3:08-CV-0194-M, 2009 WL 929119, at *1 (N.D. Tex. Mar. 13, 2009).

Dave told me that Borden-Perlman was no longer recommending that any school use Vivature for any services, including repricing.  He told me that Vivature was not doing a good job on re-pricing claims.  He said they were not only not getting anywhere near the discounts that Vivature said they would get but that Vivature was the sole cause of a delay in claims getting paid.

Dave also told me that Rider should get out of its contract with Vivature immediately and that AIG, the insurance company that Rider had its contract with, was refusing to accept any claims which were re-priced by Vivature.

 . . . Kelly told us that the numbers that Vivature had discussed with Rider on potential savings were fabricated.

. . .

Kelly also told me that no way would Vivature ever be able to set up billing for Rider.

(Appx. [341-2] at pp. 172-73.)  The affidavit from the representative of University of Arkansas Pine

Bluff states:

. . . Kelly Myers advised that Borden Perlman had been directing the school's claims away from Vivature to be re-priced at ACI's direction.

Kelly also stated that no insurance company would do business with Vivature.

Kelly stated that Vivature was the cause of all the school's claims being handled slowly.

Kelly said that Vivature was not cooperating with ACI and denied ACI access to the NExTT software.

Kelly claimed that the NExTT software was not good and did not do what had been promised and that the new software would be much better.

Kelly told us that Vivature had to be a licensed TPA to write checks for schools, and that since it was not, it was not legal for Vivature to do what it was doing for the school.

Kelly advised that the other schools that were doing business with Vivature were leaving them because of all of Vivature's problems.

Kelly said we had to stop working with Vivature.

18

(*Id.* at pp. 176-77.)  Finally, the affidavit of the representative of the University of Southern Indiana

states:

> . . . Dave was talking poorly about Vivature and trying to convince me to move the school's business away from Vivature.
>
> He said that Vivature's re-pricing discounts were not as promised, were not good, and that NAHGA would not even accept re-pricing from Vivature.  He told me that if the school continued to use Vivature that NAHGA would not accept the EOB.
>
> He stated that Vivature's automated claim forms did not work and that Vivature was the cause of the school's claims being delayed.
>
> He told me that if the school continued to do business with Vivature that Borden Perlman would no longer pay for the NExTT software.
>
> Dave informed me that NAHGA would now only accept hand-written and physically signed claim forms and would no longer accept any electronic versions of the claim from Vivature.
>
> He also said that the other schools doing business with Vivature were leaving them because of Vivature's problems.

(*Id.* at pp. 181-82.)

In order to succeed on their substantial truth defense, Defendants must establish that each

of the above statements were substantially true.  However, in their motion, Defendants do not

specifically address any of these statements.  Instead, Defendants assert six facts that they argue can

be found in "[t]he summary judgment proof" that show the alleged defamatory statements were

substantially true.[15]  (*See* Brief in Support [309] at p. 27.)  Four of these statement deal with the

policies of Arch Insurance Company, which none of the above statements put forward by Plaintiffs

mention.  The other statements, that "Orchestrate and Vivature failed to timely reprice claims" and

that "[t]he NExTT software in effect at the time did not generate usable forms," were not supported

---

[15]It is the burden of the party seeking summary judgment to cite specific evidence in the record to support its arguments.  *See supra*, n. 14.

by evidence and therefore could not be the basis for summary judgment even if those facts alone made all the statements alleged true.  Therefore, Defendants' Motion for Summary Judgment [308] will be **denied** with respect to the defamation claim against BP.

### 6.   Breach of Contract Against BP

Defendants put forward four arguments as to why Plaintiffs' breach of contract claim must fail:  (1) Plaintiffs breached the contract first; (2) the contract was unsupported by consideration; (3) the contract was void under the Statute of Frauds; and (4) Plaintiffs waived enforcement.

### a.   Plaintiffs Breached First

Defendants claim that Plaintiffs breached the contract between them first by failing to pay any portion of their repricing revenue owed to BP.  Defendants support this assertion through the affidavit testimony of Myers.  (*See* Brief in Support [309] at p. 28.)  Plaintiffs refute this claim through their own affidavit testimony, stating that, had BP not interfered and "[h]ad all schools' claims been submitted to Orchestrate for repricing, as the schools' contracts mandated, Orchestrate would have paid the repricing revenue to BP under the terms of the contract."  (Appx. [341-1] at p. 8.)  Because BP interfered with the contract and breached first, Plaintiffs argue, their breach of contract claim does not fail.  Plaintiffs further contend that Myers himself, whose affidavit Defendants rely on, stated in his deposition that he did not know whether BP had fulfilled all of their obligations under the contract prior to Plaintiffs failure to pay BP.  (*See* Appx [341-3] at pp. 385-91.) Viewing the evidence before it in the light most favorable to the Plaintiffs as the nonmovants, the Court finds that there exists a genuine dispute of fact on the issue of who breached the contract first. As such, summary judgment is not appropriate on this defense.

### b.   Failure of Consideration

A failure of consideration is a defense to a breach of contract claim and "occurs when, because of some supervening cause after an agreement is reached, the promised performance fails." *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App. 2006). Defendants' arguments under this defense are identical to those under their previous defense, and they appear to be equating a failure of consideration with a breach of contract. The Court is uncertain whether this is a legally cognizable argument. Regardless, the superseding cause in this case, according to Plaintiffs' evidence, would be Defendants own actions in interfering with Plaintiffs' contracts. Defendants cannot use their own actions in causing a failure of consideration as a defense, and the Court will not grant summary judgment on this argument.

### c.     Statute of Frauds

Defendants argue that, because the contract was not in writing and because its terms could not be performed within one year, it is unenforceable under the statute of frauds. There was no time of performance specified in the agreement between the parties.

> It is a well-established general rule that where no time is fixed by the parties for the performance of their agreement, and there is nothing in the agreement itself to show that it cannot be performed within a year according to its tenor and the understanding of the parties, the agreement is not within that part of the statute of frauds which requires contracts not to be performed within a year to be in writing.

*Miller v. Riata Cadillac Co.*, 517 S.W.773, 776 (Tex. 1974) (quoting *Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961)). However, where there has been partial performance, as in this case, an otherwise unenforceable contract is enforceable "if denial of enforcement would amount to a 'virtual fraud' on the party seeking enforcement." *Welch v. Coca-Cola Enters., Inc.*, 36 S.W.3d 532, 539 (Tex. App. 2000).

> This means that the party seeking enforcement acted in reliance on the oral contract, has suffered a substantial detriment for which he or she has no adequate remedy, and the other party would reap an unearned benefit if the statute of frauds were applied.

21

> In order to remove an oral contract from the statute of frauds, the part performance must be unequivocally referable to the alleged oral agreement and corroborative of the fact that such an agreement was made. In other words, the part performance must itself constitute persuasive evidence of the existence and terms of the oral contract.

*Id.* (internal citations omitted).

Even if the Court were to find that the confidentiality terms of the oral contract between Orchestrate and BP were understood by the parties to be in force for longer than one year, Orchestrate's part performance in giving BP access to confidential information would make the contract enforceable under *Welch*. According to its president's affidavit, Orchestrate gave BP access to confidential information in reliance of the contract. (*See* Appx. [341-1] at p. 8.) Its competitor having access to its confidential information would most certainly be a substantial detriment for which no adequate remedy could be had, and the fact that Orchestrate gave this information to BP "itself constitute[s] persuasive evidence of the existence and terms of the oral contract." *Welch*, 36 S.W.3d at 539. Therefore, viewing the evidence in the light most favorable to the nonmovants, the Court does not find that summary judgment is appropriate on this defense.

### d.    Waiver

"The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Defendants claim that Plaintiffs waived any right to confidentiality by providing BP access to confidential information without a written confidentiality agreement. They also argue that Plaintiffs waived any right to have their client list remain confidential by filing it with the original complaint in state court. Both arguments are unpersuasive.

First, Defendants cite no authority that a confidentiality agreement cannot be oral, nor is the Court aware of any such authority.  Orchestrate, before disclosing any confidential information, required BP to agree not to use this confidential information against it or attempt to steal Orchestrate's clients.  (*See* Appx. [341-1] at p. 3.)  Without any authority stating that Orchestrate's reliance on this oral agreement was unreasonable, the Court cannot say that it waived its right to confidentiality.  As for the client list supposedly disclosed in the original state court complaint, Defendants have not shown that Plaintiffs relinquished their right to its confidentiality prior to the filing of this case, and have failed to cite any authority that states a party may waive a right by bringing an action to enforce that right.  Therefore, the Motion for Summary Judgment [308] will not be granted as to this argument.

Because Defendant has failed to show that any of their defenses entitle them to summary judgment, the Court will **deny** the motion with respect to Plaintiffs' breach of contract claim.

### 7.    Negligence

Defendants contend that Plaintiffs' negligence claim must fail because they owed no duty to Plaintiffs.  Plaintiffs respond by arguing that BP, Orchestrate, and Vivature were partners and therefore owed each other a fiduciary duty.  In order to prevail on such an argument, Plaintiffs must establish that a partnership existed among them under Texas law.  Under Texas law, the following factors determine whether a partnership has been formed:

(1)    receipt or right to receive a share of profits of the business;

(2)    expression of an intent to be partners in the business;

(3)    participation or right to participate in control of the business;

(4)    sharing or agreeing to share:

(A)    losses of the business; or

23

(B)    liability for claims by third parties against the business; and

(5)    contributing or agreeing to contribute money or property to the business.

*Ingram v. Deere*, 288 S.W.3d 886, 895 (Tex. 2009).  Not all factors must be present for a partnership to exist; however, Plaintiffs do not argue that *any* of these factors are present.  *See id.*  Instead, Plaintiffs rely on the fact that Myers, in his testimony, referred to them as "partners" and that they had agreed not to interfere with each other's existing contractual obligations.  (*See* Brief in Opposition [340] at pp. 43-44.)  This is not enough to show that a duty of care between partners existed between Plaintiffs and Defendants.

Therefore, because Plaintiffs have not met their burden in establishing that Defendants had a duty of care to them with regards to their confidential and proprietary information, the Court will **grant** the Motion for Summary Judgment [308] with respect to this claim, and it will be **dismissed with prejudice**.

### 8.    Unfair Competition

Defendants argue that Plaintiffs' claim for unfair competition by misappropriation is insufficient as it requires "the misappropriation of a trade secret or unique pecuniary interest." (Brief in Support [309] at p. 32.)  This is contrary to Texas law, which only requires a product created "through extensive time, labor, skill, and money."  *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App. 2014).  In fact, the Court in *BP Automotive* specifically held that an unfair competition by misappropriation claim could go forward for the misappropriation of customer lists.  *Id.*  Defendants' arguments therefore fail, and their Motion for Summary Judgment [308] will be **denied** as to this claim.

### 9.    Fraud

Defendants argue that Plaintiffs have failed to present evidence on the elements of their fraud claim.  To survive summary judgment, Plaintiffs must establish each of the following elements:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted and relied upon the representation; and (6) the party thereby suffered injury.

*Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990) (citations omitted).  Plaintiffs contend that Defendants' representation that they would not reveal Orchestrate's confidential information amounted to fraud.  They have not, however, adduced any evidence establishing that Plaintiffs knew the representation was false when it was made, as required by the third element of the claim.  In other words, Plaintiffs have not shown that Defendants entered into the confidentiality agreement knowing that they intended to disregard it.

Plaintiffs argue that they can meet the third element of their fraud claim by showing that Defendants intentionally targeted their clients after they received the confidential information.  However, these actions necessarily happened after the representation was allegedly made, and Plaintiffs cite no authority to show that these actions can be used to prove Defendants' knowledge at the time the representation was made.  "[T]he mere failure to perform a contract is not evidence of fraud." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) (citing *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992)).  Because Plaintiffs are required to produce something more to establish Defendants had no intention of performing the contract at the time they entered into it, their claim of fraud must fail.  Therefore, the Court will **grant** Defendants' Motion for Summary Judgment [308] as to this claim, and it will be **dismissed with prejudice**.

### 10.    Negligent Misrepresentation

25

Defendants also claim that Plaintiffs cannot establish the elements of their negligent misrepresentation claim. To defeat summary judgment, Plaintiffs must show that there are genuine factual disputes as to the following elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyer v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Under Texas law, the representation must be of "existing fact" for this claim to go forward. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App. 1999). Plaintiffs argue that their claim is based on a nondisclosure, which can be a basis for a negligent misrepresentation claim when there is a duty to disclose. Plaintiffs contend that BP, Orchestrate, and Vivature were partners, which placed a duty to disclose on BP. However, as stated above, *see supra* Part III.C.7, Plaintiffs have not met their burden in establishing that a partnership existed among BP, Orchestrate, and Vivature under Texas law. The Court therefore finds that no duty to disclose existed, and Plaintiffs have not met their burden in establishing their negligent misrepresentation claim. The Court will **grant** Defendants' Motion for Summary Judgment [308] as to this claim, and it will be **dismissed with prejudice**.

### 11.     Punitive Damages

Punitive damages may only be awarded when provided by statute or "if the claimant proves by clear and convincing evidence that the harm . . . result[ed] from:  (1) fraud; (2) malice; or (3) gross negligence."  Tex. Civ. Prac. & Rem. Code § 41.003.  Plaintiffs' claims of fraud and negligence have been dismissed, and the only other specific claims they point to as the basis for punitive damages are their claims of aiding and abetting a breach of fiduciary duty and defamation.

26

However, they cite no evidence in the record to support a finding of fraud, malic, or gross negligence on these or any claims.  Therefore, the Court must find that they have failed to meet their burden in showing, by clear and convincing evidence, that punitive damages are warranted in this case, and Defendants' Motion for Summary Judgment [308] will be **granted** with respect to these damages.  Plaintiffs' claim for punitive damages will be **dismissed with prejudice**.

## IV.  OTHER PENDING MATTERS [301][307]

### A.        Motion to Disqualify Defendants' Counsel [301]

Plaintiffs argue that Defendants' Counsel should be disqualified because their former attorney, Mark Shank ("Shank"), interviewed Vivature's former general counsel, Andrew Menter ("Menter"), and passed the notes of that interview onto Plaintiffs' current counsel, Sandra Liser ("Liser").  According to the ABA's commentary on the Model Code of Professional Conduct, "a lawyer is generally free to communicate with a corporate opponent's in-house counsel about a case in which the corporation has hired outside counsel." Ann. Model Code of Prof'l Conduct 4.2 annotation. Furthermore, "[c]onsent of the organization's lawyers is not required for communication with a former constituent."  *Id.* at cmt. 7.  It does not appear to the Court that Defendants' former counsel committed an ethical violation, then, by communicating with Vivature's former general counsel.  It was Menter's obligation to ensure that he did not reveal confidential or privileged information, *not* Shank's obligation to somehow identify which information was confidential or privileged and not use it in his representation of Defendants.

Because Defendants' former counsel does not appear to have committed an ethical violation deserving of disqualification, the Court cannot disqualify Liser and her law firm based on Shank's non-existent violation.  Even if an ethical violation that could be imputed to Liser and her firm *had* occurred, Plaintiffs have not shown that they suffered actual prejudice from any alleged violation.

*See In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) ("[A] court should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification."). Instead, Plaintiffs attempt to argue that the notes from the Menter interview in Liser's possession, which are privileged work product, must be harmful to them because Liser refuses to turn the notes over to them. This argument is not enough to meet their burden of showing actual prejudice.

The Court will therefore **deny** the Motion to Disqualify Defendants' Counsel [301]. The Court declines to exercise its discretion to award attorneys' fees for this motion.

### B.      Motion to Strike Testimony [307]

In their Motion to Strike Testimony [307], Defendants argue that the expert testimony of Lance Wilson, Mouzon Bass III, and Scott M. Wood should be excluded in this case.

#### 1.      Lance Wilson

Plaintiffs agree that Lance Wilson will only be offered as a fact witness. Therefore, the Court will **grant** the Motion to Strike Testimony [307] with respect to him, and he will only be allowed to testify as a fact witness.

#### 2.      Mouzon Bass III

##### a.      Rule 26(a)(2)(B)

Defendants first contend that Mouzan Bass III ("Bass") should be excluded from testifying as an expert because Plaintiffs were required to submit his expert report under Federal Rule of Civil Procedure 26(a)(2)(B). However, Bass's expert testimony is based entirely on his "firsthand knowledge of activities [he] was personally involved in before the commencement of this lawsuit and during the course of [his] work as President of OrchestrateHR and Vivature as the lawsuit progressed. (Plaintiffs' Appx. [326] at p. 2.) Therefore, he was not required to submit a report

28

under Rule 26(a)(2)(B), and the Court will not exclude his testimony on this basis. *See Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) ("[W]e conclude that as long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B).); *see also LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475, 478 (E.D. La. 2013) (quoting *Downey*, 633 F.3d at 17) ("The Court stated that 'as long as their testimony at trial in confined to their personal knowledge, they are not Rule 26(a)(2)(B) witnesses . . . ."); *Beane v. Utility Trail Mfg. Co.*, No. 2:10-CV-781, 2013 WL 1344762 at *3 (W.D. La. Feb. 25, 2013) ("[T]he distinction between a 26(a)(2)(B) and a 26(a)(2)(C) expert is that 26(a)(2)(C) experts' conclusions and opinions arise from firsthand knowledge of activities they were personally involved in before the commencement of the lawsuit . . . ."); *Skyeward Bound Ranch v. City of San Antonio*, No. SA-10-CV-0316, 2011 WL 2162719, at *2 (W.D. Tex. June 1, 2011) (holding that "to escape the requirement that he submit a full expert report," an expert must have "first-hand knowledge of [the] case").

### b.  F.R.E. 702 and *Daubert*

The admissibility of expert testimony is governed by F.R.E. 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has explained that this rule places the district court into a gatekeeping role in order to ensure that scientific evidence is both reliable and relevant. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 597, 113 S. Ct. 2786). As explained by the Fifth Circuit,

> This role requires the district judge to undertake a two-part analysis. The district judge must first determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. Second, the district judge must determine whether that reasoning or methodology can be properly applied to the facts in issue; that is, whether it is relevant.

*Id.* (citing *Daubert*, 509 U.S. at 592-93, 113 S. Ct. 2786).

The only argument against Bass's expert testimony Defendants make under F.R.E. 702 and *Daubert* is that he "offers [no] explanation as to the specifically [sic] how any acts by Defendants caused those damages." (Motion to Strike Testimony [307] at p. 6.) Defendants make no attempt to specify for the Court which damages to which they refer, or in what way Bass's expert opinions do not apply any proper methodology as to connect their actions with those damages. Because it is the Defendants' burden to show exclusion is proper, the Court will **deny** their Motion to Strike Testimony [307] as to Bass.

### 3.    Scott M. Wood

Defendants make an identical argument against Scott M. Wood's ("Wood") expert testimony under F.R.E. 702 and *Daubert* as the Court has already denied as it pertains to Bass. It will be denied as to Wood as well.

Additionally, Defendants argue that Wood's background does not qualify him as an expert under F.R.E. 702 and *Daubert*. Defendants contend that, because Wood's background is in primary health insurance and not secondary or excess health insurance, he does not have "scientific,

30

technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Defendants offer no explanation as to why the Court should distinguish between primary and secondary health insurance when it comes to specialized knowledge of the health insurance industry, and does not provide the Court with Wood's resume, despite referencing it in their motion.

Furthermore, Plaintiffs have produced a declaration from Wood stating that he does have experience in secondary health insurance, as well as Wood's resume.  (*See* Plaintiffs' Appx. [326] at pp. 140-47.)  In reviewing Wood's resume, the Court can see nothing that supports Defendants' claim that Wood's experience is only in primary health insurance.  As Defendants have offered no explanation for their claim and point to no specific evidence that Wood's background is limited, the Court would not strike his expert testimony on these grounds even if Defendants had given a reason why primary and secondary health insurance should be distinguished in the industry.

For the foregoing reasons, the Court will **deny** the Motion to Strike Testimony [308] as to Wood.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiffs' Motion to Strike [300] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Trombetta's Motion for Summary Judgment [271] is **denied**.  All claims against Trombetta remain pending.

IT IS FURTHER ORDERED AND ADJUDGED that Myers, Icenhower, and BP's Motion for Summary Judgment [308] is **granted in part** and **denied in part**.

It is **granted** in that the following claims are **dismissed with prejudice**:  (i) defamation against Icenhower and Myers; (ii) tortious interference with contract against Icenhower and Myers;

(iii) tortious interference with business relations against BP, Icenhower, and Myers; (iv) tortious interference with contract against BP with respect to all entities EXCEPT Rider University, University of Arkansas Pine Bluff, and University of Southern Indiana; (v) negligence against BP, Icenhower, and Myers; (vi) fraud against BP and Myers; negligent misrepresentation against BP and Myers; and (vii) punitive damages against BP, Icenhower and Myers.

It is **denied** in that the following claims remain pending:  (i) aiding and abetting breach of fiduciary duty against BP, Icenhower, and Myers; (ii) tortious interference with contract against BP with respect to Rider University, University of Arkansas Pine Bluff, and University of Southern Indiana; (iii) defamation against BP; (iv) breach of contract against BP; (v) unfair competition against BP, and (vi) unjust enrichment against BP.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' Motion to Disqualify Defendants' Counsel [301] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' Motion to Strike Testimony [308] is **granted in part** and **denied in part**.

It is **granted** in that Wilson's testimony will be limited to that of a fact witness by agreement of parties.

It is **denied** in that Bass's and Wood's expert testimony will be excluded.

SO ORDERED AND ADJUDGED this the 1st day of September, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE